## Mueller's Estate.   Wenderoth's Appeal.

*Decedents' estates—Evidence—Declarations—Res gestæ.*

Claims against a dead man's estate which might have been made against himself while living are always subject to just suspicion.

Testimony of a person claiming to recover money alleged to have been loaned to decedent to the effect that, after the purchase of a house by decedent, claimant took part of the purchase money to the title company which was examining the title, and asserted to the officer to whom he handed it that he was advancing the money as a loan, is not admissible in the absence of evidence that decedent was present and assented to the statement.

Such a declaration is also inadmissible as part of the res gestæ. It is rather in the nature of a self-serving declaration, and therefore not entitled to any consideration as evidence in support of appellant's claim against the estate.

Argued Jan. 11, 1894.  Appeal, No. 7, July T., 1893, by Wiegand E. Wenderoth, claiming to be a creditor, from decree of O. C. Phila. Co., Jan T., 1891, No. 334, dismissing exceptions to adjudication in estate of Emil J. Mueller, deceased. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.

Exceptions to adjudication of executor's account.

Before the auditing judge, FERGUSON, J., Wiegand E. Wenderoth claimed to recover $1,200 alleged to have been loaned to decedent.

Wm. Knowles, a witness called on behalf of Wiegand E. Wenderoth, testified as follows: "Q. Did you know E. J. Mueller in his lifetime? A. Yes, sir. Q. Mr. Mueller bought a certain property. Will you please state to the court how that money was paid, and by whom and when it was paid? A. The property that was bought was No. 707 Huntingdon street, October, 1888, and on Nov. 5, 1888, a settlement was had at the office of the German American Title & Trust Co., and Mr. Wiegand Wenderoth paid out $1,200 towards the purchase of the property for Emil J. Mueller. I told him he had better take a mortgage at that time. Q. Was Mueller present at that time? A. I think he was there that day. Q. To the best of your memory I understand you to say that this conversation took place in the presence of all the parties there at the settle-

ment?  A.  Yes, sir, I think so.   I told him he had better have
a mortgage drawn for the money, and he said, no, he would
not put him to that expense, that he was his son-in-law.  I
then said: 'Well, then take a judgment note.'  'No,' he said
'it is all right, he will pay me back.'  I told him at the time
that in case of the death of his son-in-law there might be trouble
about the money.  Q.  How did it arise that he told you that
the money was his and not his son-in-law's, whom he was repre-
senting at that time?  A.  He told me he had loaned it to him
to buy the house with.  Q.  You are not sure that Mr. Mueller
was there at that time?  A.  I could not say positively; there
are so many people there in the morning at the settlement de-
partment, eight or ten a day.  Q.  Who were present at the
settlement besides?  A.  The settlement clerk and Mr. Haas
and Mr. Wenderoth.  There might have been a dozen people
there."

The auditing judge refused to allow the claim.

Exceptions to the adjudication by appellant were dismissed
in an opinion, as follows, by PENROSE, J.:

" If the case of the claimant is a hard one he alone is respon-
sible for it.   So far as appears there was no assertion of indebt-
edness during the two years that the decedent survived the
transaction in which it is said to have originated, and nothing
whatever was done in the way of obtaining or asking for the
evidence by which loans of so considerable an amount are ordi-
narily secured.   Unless, therefore, his own declaration, in the
absence of the decedent, is accepted as proof, the auditing judge
could do nothing else than reject the claim.

" It is argued, however, that though in general the party's
own declarations are not evidence in his favor, the rule is dif-
ferent where they are part of the res gestæ, and that such is
their character in the present case.   The decedent had pur-
chased a house, and the claimant, who was his father-in-law,
took the cash, part of the purchase money, to the company em-
ployed to examine the title, asserting to the officer to whom he
handed it that he was advancing it by way of loan.   In so taking
the money he was representing the decedent as agent, and the
assertion of loan, being outside of his agency, cannot be regarded
as part of the res gestæ.   If the law were as contended, pay-
ment through the instrumentality of an agent would be attended

with great risk; and the office boy sent to bank to make deposits might in this way be found to be the largest creditor of his employer's estate."

*Errors assigned* were dismissal of exceptions, quoting them.

*B. F. Fisher*, for appellant, cited: Whart. Ev. § 1102; Phillips, Ev. 185; Tompkins v. Saltmarsh, 14 S. & R. 275; Louden v. Blythe, 16 Pa. 532; Potts v. Everhart, 26 Pa. 493; Kidder v. Lovell, 14 Pa. 214; Vance v. Hatten, 1 N. & Mc.C., 221; Stephens' Digest, Evidence, p. 6; Waldele v. R. R., 95 N. Y. 274; Lander v. People, 104 Ill. 248; Norwich Co. v. Flint, 13 Wall. 3; Com. v. Densmore, 12 Allen, 535; People v. Davis, 56 N. Y. 95; Eighmy v. People, 79 N. Y. 546; Bennett v. Hethington, 16 S. & R. 195; Jones v. Brownfield, 2 Pa. 55; Postens v. Postens, 3 W. & S. 127; Kock v. Howell, 6 W. & S. 350: Kimmel v. McRight, 2 Pa. 38; Ellis v. Guggenheim, 20 Pa. 287; Cattison v. Cattison, 22 Pa. 275; Devling v. Little, 26 Pa. 502; Bank v. Carter, 38 Pa. 446; Woodell v. Brown, 44 Pa. 121; Miles v. Miles, 8 W. & S. 135; The Portland, 2 S. R. 197; Fox v. Foster, 4 Pa. 119; Hollinshead v. Allen, 17 Pa. 275; Rees v. Livingston, 41 Pa. 113; Howser v. Com., 51 Pa. 332; Bank v. McManig, 69 Pa. 156.

*M. J. O'Callaghan*, for appellee, cited: Stephen's Dig. § 3; Taylor on Evidence, Blackstone Series, § 587; 1 Rice, Evidence, p. 369; 1 Greenl. Ev. § 114; 1 Whart., Ev., 3d ed. § 114; Young v. Com., 28 Pa. 501; Parry v. Parry, 130 Pa. 94; Clever v. Hilberry, 116 Pa. 431; Miller's Ap., 100 Pa. 568; Crane v. Morris, 6 Pet. 598; Wood v. Donahue, 94 Pa. 128; Lee v. McMillan, 125 Pa. 74; Carpenter v. Hays, 153 Pa. 432.

OPINION BY MR. CHIEF JUSTICE STERRETT, Feb. 12, 1894:

As was well said in Carpenter v. Hays, 153 Pa. 432: " Claims against a dead man's estate which might have been made against himself while living, are always subjects of just suspicion, and our books, from Graham v. Graham, 34 Pa. 475, to Miller's Ap., 136 Pa. 239, 249, are full of expressions by this court of the necessity of strict requirement of proof, and the firm control

of juries in such cases." It was, therefore, incumbent on appellant, asserting his right as a creditor of the estate to participate in the distribution, to substantiate his claim by competent and sufficient evidence. We think he failed to furnish the necessary proof. The learned auditing judge found against him, and that finding was approved by the court in banc. We are now asked to reverse the finding of fact thus approved. To warrant us in so doing, especially in such circumstances as are presented in this case, it is not sufficient to show that grave doubts exist as to the correctness of the adverse finding; clear error therein must be shown.

It is conceded that, shortly after decedent's marriage to appellant's daughter, the former bought the house and lot, from the sale of which the fund for distribution was raised. At the settlement for that purchase, superintended by William E. Knowles in the office of the German American Title & Trust Company, on or about the 5th of November, 1888, appellant handed Mr. Knowles $1,200, which was used in payment of the purchase money; but whether this was the money of appellant or of the decedent, or whether it was a loan or a gift, there is no competent evidence. It is claimed that the fact of producing and handing over the $1,200 by appellant, and its use as part of the purchase money for the house, to which the decedent was about taking title, made out a prima facie claim against the estate; but we cannot so regard it. Nor do we think it was competent to supplement such evidence by proving that appellant, when he handed the $1,200 to Mr. Knowles, said he was loaning same to his son-in-law to assist him in buying the house, etc., unless it was also shown that this was said in the presence and in the hearing of the decedent. The testimony of Mr. Knowles not only leaves it in doubt whether the decedent was even present when said statement was made by appellant; but, aside from that, there is nothing in his testimony that would warrant the inference that, if present, decedent heard and by his silence impliedly assented to the correctness of the statement so made. In answer to the question, whether he was sure decedent " was there at that time," Mr. Knowles answered: " I could not say positively; there are so many people there in the morning in the settlement department, eight or ten a day."

VOL. CLIX—38

There was no error in not considering appellant's statement to Mr. Knowles as part of the res gestæ. It had no necessary connection with the settlement, the business then being transacted ; nor does it appear that appellant was there for any other purpose than that of handing over the $1,200 for his son-in-law, to be applied as part payment of the purchase money. Any statement he may have then volunteered to make, not in the presence, or not in the hearing of his son-in-law, cannot in any proper sense of the term be regarded as part of the res gestæ. It was rather in the nature of a self-serving declaration, and therefore not entitled to any consideration as evidence in support of appellant's claim against the estate : 1 Whart. Ev., sec. 259.

For these and other reasons given by the court below we are satisfied the conclusion there announced is correct, and the decree should be affirmed.

Decree affirmed and appeal dismissed, with costs to be paid by appellant.